UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SAFECO INSURANCE COMPANY OF )
ILLINOIS, et al., )
　 )
　　　　Plaintiffs, )
　 )
　　vs. )　　　　Case No. 4:18CV1326HEA
　 )
JOSEPH A. PALAZZOLO, et al., )
　 )
　　　　Defendants. )

## OPINION, MEMORANDUM AND ORDER

　　　　This matter is before the court on Plaintiffs' Motion for Summary Judgment,

[Doc. No. 39], and Defendants' Motion for Summary Judgment, [Doc. No. 46].

The motions have been fully briefed by the parties. For the reasons articulated

below, Plaintiffs' Motion for Summary Judgment will be granted, and Defendants'

Motion for Summary Judgment will be denied.

### Facts and Background

　　　　This case arises out of a coverage dispute between Plaintiffs Safeco

Insurance Company of Illinois and Safeco Insurance Company of America

("Plaintiffs") and Defendants Joseph Palazzolo ("Joseph"), Nancy Palazzolo

("Nancy"), and minor R.P. (collectively, "Defendants") concerning the accidental

death of Lauren Palazzolo ("Lauren"). Lauren was Joseph and Nancy's daughter

and R.P.'s mother.

1

The following facts are undisputed:

On April 9, 2017, Lauren Palazzolo was killed in an accident when a 2007 Suzuki GSX-R600 motorcycle (the "Motorcycle") on which she was riding as a passenger collided with a 2008 Chevrolet Impala driven by Isaiah Davis (the "Accident"). Lauren owned the Motorcycle, having purchased it on December 14, 2016. Davis' 2008 Chevrolet Impala was not covered by any liability insurance at the time of the Accident.

Safeco Insurance Company of Illinois issued an automobile policy to named insureds Joseph Palazzolo and Nancy Palazzolo, Policy No. Z4839785, with effective dates of November 15, 2016 through November 15, 2017 (the "Auto Policy"). Safeco Insurance Company of America also issued a personal umbrella policy to named insureds Joseph Palazzolo and Nancy Palazzolo, Policy No. UZ4779378 (the "Umbrella Policy").

The Auto Policy identified three covered vehicles: a 2010 Jeep Compass, a 2008 Nissan Altima, and a 2007 Ford Edge. None of the vehicles listed on the Auto Policy's declarations page were involved in the Accident. At the time the Auto Policy was issued, Defendants resided in Missouri and, therefore, the vehicles covered under the Auto Policy were primarily garaged in Missouri. The Motorcycle is not listed as a covered vehicle in the Auto Policy's declarations page, and no premium was charged to cover the Motorcycle.

The Auto Policy includes uninsured motorist ("UM") coverage, with a limit of $500,000 for "Each Accident" and also includes underinsured motorist ("UIM") coverage, with a limit of $500,000 for "Each Accident." Although Defendants previously made demand for payment under both the Auto Policy and Umbrella Policy for both UM and UIM coverage, Defendants now state in their memorandum in opposition to summary judgment that they do not seek to recover UIM coverage under the Auto Policy or any coverage under the Umbrella Policy. In other words, Defendants seek only to recover the Auto Policy's UM coverage limits.

The Auto Policy's UM coverage part provides:

**PART C – UNINSURED MOTORISTS COVERAGE**
**INSURING AGREEMENT**

A. We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** sustained by that **insured**. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

The Auto Policy defines the term "insured" for purposes of UM coverage as follows:

C. **"Insured"** as used in this Part C — Uninsured Motorists Coverage means:

1. You.

2. Any **family member** who does not own an auto.

3. Any **family member** who owns an auto, but only while occupying your covered auto.

3

4. Any other person **occupying your covered auto** with your express or implied permission. The actual use must be within the scope of that permission.

5. Any person entitled to recover damages because of **bodily injury** to which this coverage applies sustained by a person described in **B.1., B.2., B.3., or B.4.** above.

The Auto policy defines the terms "you" and "your" in pertinent part as follows:

**DEFINITIONS**

A. Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations;

2. The spouse if a resident of the same household;

. . .

Both Joseph and Nancy, who are listed as named insureds in the Auto Policy's declarations page, qualify as "you" under the Auto Policy. Lauren is not listed as a named insured and does not qualify as "you" under the Auto Policy's definition.

The Auto Policy defines the term "family member" as follows:

**G. "Family member"** means a person related to you by blood, marriage, civil union, domestic partnership or adoption who is a resident of your household. This includes a ward or foster child who is a resident of your household.

The Auto Policy contains the following pertinent definition of the term "your covered auto":

**M. "Your covered auto"** means:

1. Any vehicle shown in the Declarations.

2. a. Any newly acquired vehicle, whether operational or not, on the date you become the owner, subject to conditions for **Newly Acquired Replacement Vehicle** and **Newly Acquired**

4

**Additional Vehicle** under M.2.b. below. Any newly acquired vehicle must be of the following types:

(1) a private passenger auto;

(2) a pickup or van that: . . .

(3) a motorhome or **trailer**.

. . .

3. Any auto or **trailer** you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. breakdown;

b. repair;

c. servicing;

d. loss; or

e. destruction.

The Auto Policy contains the following pertinent Exclusions in its UM

coverage part:

**EXCLUSIONS**

A. We do not provided Uninsured Motorists Coverage for bodily injury sustained by a family member who does not own an auto, while occupying, or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any insured:

. . .

5. While occupying or operating an owned motorcycle or moped.

The term "owned" is not defined in the Auto Policy.

The Auto Policy lists Lauren as a "rated driver." Nancy and Joseph were

charged premiums for each type of coverage and each vehicle on the Auto Policy

5

to account for Lauren's inclusion as a "rated driver" on the Auto Policy. Nancy and Joseph paid all premiums related to the Auto Policy as of the date of Lauren's death.

Nancy and Joseph reside at 9749 Tesson Creek Estates Drive in St. Louis, Missouri (the "Tesson residence"). In April 2014, Lauren bought her own home at 10718 Cathy Drive in St. Louis, Missouri (the "Cathy residence"). The Cathy residence and the Tesson residence are approximately two miles apart. After purchasing the Cathy residence, Lauren periodically visited the Tesson residence. Lauren and R.P. each had their own room in the Tesson Residence. Lauren kept some clothes and toiletries at the Tesson residence and Lauren stayed overnight there on a regular basis, sometimes two to three nights a week. Lauren would stay at the Tesson residence when Joseph and Nancy were not there. On a regular basis, Lauren shared family meals, cooked, did laundry, contributed to household chores and abided by household rules at the Tesson residence.

Lauren had a joint bank account with Nancy for the benefit of R.P. that held a balance at the time of her death. The addressed used for the joint bank account was that of the Tesson residence. Lauren's driver's license, with an expiration date of November 17, 2018, listed the Tesson residence as her address. Lauren's 2016 pay stubs show as her address the Tesson residence, as does her W-2 that year.

6

Lauren did not pay any of Joseph and Nancy's bills for the Tesson residence.
She did not have any input regarding repairs or decisions relating to the Tesson
residence. Lauren only received junk mail at the Tesson residence; she did not
receive bills there. Following her death, however, Nancy and Joseph received the
following mail addressed to Lauren at the Tesson residence: official
correspondence from the Missouri Department of Social Services Family Support
Division; a medical bill for emergency medical services rendered to Lauren on the
date of her death; and, financial card services account information.

Lauren made mortgage payments on the Cathy residence with assistance
from Joseph and Nancy. Joseph and Nancy contributed money to Lauren on a
regular basis during the last years of her life, but they did not pay Lauren's
monthly bills directly. Lauren managed her own checking account and paid the
utility bills for the Cathy residence including electric and heat. The Cathy
residence was furnished and most of Lauren's possessions were kept there. Lauren
selected R.P.'s pediatrician and made the decisions regarding his care. In April
2016, Lauren listed the Cathy Residence as the "Address where you live" on an
application for childcare assistance. Lauren's Missouri death certificate listed the
Cathy residence as her "Residence Address."

Neither Joseph nor Nancy was aware of any plan for Lauren to move into
the Tesson residence permanently or for Lauren to sell the Cathy residence,

although Joseph and Nancy contend that "Lauren continued to be a permanent part of the Tesson home."

In October 2014, Lauren completed a food stamp application for which she was required to list "all the people who live in your household." Lauren listed only herself and R.P. as the people living in her household. In January 2017, Lauren once again listed only R.P and herself as members of her household in an application for food stamp benefits. In a February 2017 application for Temporary Assistance Cash Benefits, Lauren listed only herself and R.P and herself as members of her household.

Both Nancy's and Lauren's names were on the Certificate of Title of the 2007 Ford Edge. During their respective depositions, Joe testified that Lauren "mainly" drove the Ford Edge and kept it at the Cathy residence, while Nancy testified that Lauren drove the Ford Edge half the time and the Nissan Altima half the time. When Lauren used the Ford Edge, she used it for multiple days in a row and paid for her own gasoline. In a November 2014 document relating to her food stamps application, Lauren listed the 2007 Ford Edge in response to the question "Do any household members you listed own a car, truck, motorcycle, or recreational vehicle?" In her February 2017 application for Temporary Assistance Cash Benefits, Lauren listed the 2007 Ford Edge as a vehicle she owned.

Neither Nancy nor Joseph owned the Motorcycle. The Motorcycle was always kept at the Cathy residence. At the time of the Accident, the Motorcycle was insured under a motorcycle policy issued by Progressive Max Insurance Company ("Progressive") to Lauren. Progressive offered payment of the $25,000 liability limit as a result of the Accident. The Progressive Motorcycle Policy which covered the Motorcycle involved in the Accident listed the Cathy residence as Lauren's address.

In Plaintiffs' Motion for Summary Judgment, Plaintiffs argue that no coverage for the Accident is afforded by the Auto Policy because Lauren is not an "insured" for purposes of UM coverage, and the Accident is subject to the UM coverage exclusion for motorcycles.[1] The first two arguments in support of Defendants' Motion for Summary Judgement are the converse of Plaintiffs', i.e. that Lauren is included as an "insured" under the Auto Policy because she is a family member of Joseph and Nancy who does not own an auto, and that the UM coverage exclusion cited by Plaintiffs does not exclude coverage because is duplicitous and ambiguous. Defendants also argue that if Lauren is not an "insured" for UM coverage purposes, then the amount paid by Joseph and Nancy to include Lauren as a rated driver on the Auto Policy got them nothing beyond the

---

[1] Plaintiffs originally included additional argument in support of summary judgment involving UIM coverage and the Umbrella Policy. Because Defendants seek neither UIM coverage nor coverage under the Umbrella policy, these arguments need not be included here.

"permissive driver" coverage they already had, resulting in "illusory coverage" and an ambiguity in the contract that must be resolved in favor of coverage.

## Summary Judgment Standard

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine [dispute] of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn*., 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id*. "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted). Once the moving party has met its burden, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial." *Id*.

(internal quotation marks and citation omitted).

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)). The nonmoving party may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in his or her favor. *Wilson,* 62 F.3d 237, 241 (8th Cir. 1995). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines,* 2008 WL 2609197 at *3 (8th Cir. 2008).

Because "the interpretation and construction of insurance policies is a matter of law, ... such cases are particularly amenable to summary judgment." *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir. 1991).

## Discussion

11

"State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship." *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012). "A federal court sitting in a diversity case must apply the forum state's conflict of law rules." *Curran Composites, Inc. v. Liberty Mut. Ins. Co.*, 874 F. Supp. 261, 264 (W.D. Mo. 1994) (citing *Simpson v. Liberty Mutual Ins. Co.,* 28 F.3d 763, 764 (8th Cir.1994)). If, as here, an insurance contract does not specify which state's law applies, Missouri applies § 193 of the Restatement (Second) of Conflict of Laws. *Id.* at 264 (citing *Crown Ctr. Redevelopment Corp. v. Occidental Fire & Cas. Co. of N. Carolina*, 716 S.W.2d 348, 358–59 (Mo. App. W.D. 1986). Under § 193, Missouri courts will apply the law of the state where "the principal location of the insured risk" is located, unless another state has a more significant relationship to the transaction and the parties. *Thunder Basin Coal Co. v. Zurich Am. Ins. Co.*, 943 F. Supp. 2d 1010, 1013 (E.D. Mo. 2013) (quoting Restatement (Second) of Conflict of Laws § 193). Here, the parties do not dispute that Missouri law governs the interpretation of the Auto Policy in this diversity action, and the Court agrees.

Under Missouri law the interpretation of the meaning of an insurance policy is a question of law. *Capitol Indem. Corp. v. 1405 Associates, Inc.*, 340 F.3d 547, 547 (8th Cir. 2003). The general rules for interpretation of contracts apply to insurance policies. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 301–02

(Mo. banc 1993). When "construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009). Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole. *Id.* Courts must "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008).

If the policy language is unambiguous, it must be enforced as written. *Id.* But if the language is ambiguous, courts should construe the policy in favor of the insured. *Id.* The fact that the parties disagree over the policy's interpretation does not render a term ambiguous. *O'Rourke v. Esurance Ins. Co.*, 325 S.W.3d 395, 398 (Mo. Ct. App. 2010). "[A]mbiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). However, a court must not "unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity when none exists." *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007).

Whether Lauren qualifies as an "insured" under the Auto Policy is a preliminary issue, with both possible outcomes on that issue leading to a different determinative question, i.e.: if Lauren is an insured under the Auto Policy, then the determinative question which must be answered is whether the Accident is excluded from coverage under the UM motorcycle exclusion; on the other hand, if Lauren is not an insured under the Auto Policy, then the determinative question which must be answered is whether the premiums paid by Joseph and Nancy to include Lauren as a rated driver create nothing more than "illusory coverage." Accordingly, the Court proceeds with its analysis by assuming each answer to the preliminary question and analyzing the appropriate determinative question that follows. Under this framework, the Court needs not and does not examine or decide Lauren's status as an "insured."

The UM motorcycle exclusion

The Court begins by assuming without deciding that Lauren meets the definition of an "insured" under the Auto Policy's UM coverage, and proceeds to examine whether Exclusion B.5. to UM coverage (the "Exclusion" or "UM Exclusion B.5.") bars coverage for the Accident. The Exclusion reads: "We do not provide Uninsured Motorists Coverage for bodily injury sustained by any insured [w]hile occupying or operating an owned motorcycle or moped." Plaintiffs argue that as a matter of law, the Exclusion applies because Lauren was occupying a

14

motorcycle she owned, and thus Lauren's Accident is not covered under the UM part of the Auto Policy. Defendants argue that as a matter of law the term "owned" is ambiguous and therefore the Exclusion does not apply.

The burden of showing that an exclusion to coverage applies is on the insurer, and exclusionary clauses are construed strictly against the drafter. *Manner v. Schiermeier*, 393 S.W.3d 58, 62 (Mo. banc 2013) (citing *Burns,* 303 S.W.3d 505, 510 (Mo. banc 2010)). Plaintiffs met their initial burden by showing that there is no dispute that Lauren sustained fatal injuries while occupying a motorcycle that she owned.

Defendants contend, however, that the term "owned" as used in the Exclusion is ambiguous and that the policy should be interpreted as awarding coverage for Lauren's Accident. Defendants note that the term "owned" is not defined in the Auto Policy and is open to "multiple meanings." The multiple meanings proposed by Defendants are either "a motorcycle/moped owned [by] an operator, occupant, friend, relative, acquaintance, stranger, a tortfeasor, unknown/unidentified person, other persons," or "the opposite of stolen, borrowed, or rented, etc."

Responding to this argument, Plaintiffs acknowledge that the Missouri Supreme Court has held that the meaning of "owned" can be ambiguous. In *Manner*, the Missouri Supreme Court held that:

15

> "[w]hile the meaning of 'owned' may vary in particular
> circumstances, case law similarly indicates that it usually involves
> establishing either title, *see, e.g., Case v. Universal Underwriters
> Insurance Company,* 534 S.W.2d 635 (Mo.App.1976) (title
> establishes a rebuttable presumption of ownership), or the power to
> 'voluntarily destroy, encumber, sell, or otherwise dispose' of the
> property, *see, e.g., Lightner v. Farmers Ins. Co., Inc.,* 789 S.W.2d 487
> (Mo. banc 1990) (finding ownership on this basis)."

393 S.W.3d at 63. These meanings align with the dictionary definition of own as

"to have or hold as property: possess" or "to have power of mastery over." See,

Merriam-Webster, https://www.merriam-webster.com/dictionary/own. Plaintiffs

argue that Lauren meets both definitions of "owned" because it is undisputed that

Lauren had title to the motorcycle and had the power to voluntarily destroy,

encumber, sell, or otherwise dispose of the motorcycle.

The Court does not find ambiguity in the Exclusion. Defendants' theory of

ambiguity rests on the idea that "owned" as used in the Exclusion must have a

modifier expressly stating by whom the motorcycle is owned. To this end,

Defendants suggest that, as written, the Exclusion could apply in a variety of

situations, including when: the motorcycle is owned by a friend, the motorcycle is

owned by the operator, the motorcycle is stolen or rented, etc. (The Court notes

that in a stolen or rented situation, for example, the motorcycle would be likely

owned by the "stranger" already listed in Defendants' first potential group of

owners.)

16

This proposed interpretation is not a reasonable construction of the Exclusion. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Maune*, 277 S.W.3d 754, 758 (Mo. App. E.D. 2009) ("As repeatedly stated by the courts of this state, an ambiguity arises in an insurance policy when, due to duplicity, indistinctness, or uncertainty in the meaning of the words used, the policy is reasonably open to different constructions." (internal quotation omitted)). The only non-insurance company subject of the Exclusion is the insured who sustained bodily injury. The Exclusion does not mention an "operator, occupant, friend, relative, acquaintance, stranger, a tortfeasor, unknown or unidentified person, other persons" or any other possible person or entity suggested by Defendants. The Court must not "exercise inventive powers for the purpose of creating an ambiguity when none exists," *Todd*, 223 S.W.3d at 163, and therefore cannot reasonably read into the Exclusion some speculative, possible owners. The Exclusion unambiguously applies to the injured insured.

Defendants argue that the Court must also consider the "whole policy" as stated in *Yager v. Shelter Gen. Ins. Co.*:

> [T]he fact that a definition is clear and unambiguous does not end the inquiry as to the existence of an ambiguity until the court has reviewed the "whole policy" to determine whether there is contradictory language that would cause confusion and ambiguity in the mind of the average policy holder.

460 S.W.3d 68, 73–74 (Mo. App. W.D. 2015) (quoting *Miller v. Ho Kun Yun,* 400 S.W.3d 779, 786 (Mo. App. W.D. 2013). Specifically, Defendants note that Exclusion A to the UM coverage part of the Auto Policy "is precise as to the term 'own' " because it states "any motor vehicle *you own*," (emphasis added,) where "you" is defined in the Policy. Additionally, Defendants point to the Auto Policy's UIM coverage exclusions which refer to "any motor vehicle *owned by that insured*" (UIM exclusion A.1.) and "any motor vehicle *you own*" (UIM exclusion A.2.) (emphases added). Again, Defendants contend that the "qualifying language" in the UIM exclusions render them "different" from the UM Exclusion B.5. Defendants argue that "As drafters of the Policy, Safeco must have intended the exclusions of UM and UIM coverages to have different meanings. Safeco chose to qualify its UIM, while keeping the UM exclusion B.5. ambiguous…"

After review of the whole policy and the parties' arguments, the Court does not find contradictory language that would cause confusion and ambiguity in the mind of an average policy holder. UM Exclusion A reads:

> We do not provide Uninsured Motorists Coverage for bodily injury sustained by a family member who does not own an auto, while occupying, or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

That UM Exclusion A specifies ownership by those people meeting the policy's definition of "you" and UM Exclusion B.5. does not mention "you" only serves to clarify that UM Exclusions A and B.5. involve two differently defined sets of

18

owners and two different sets of vehicles (i.e. "any motor vehicle" vs. "[a] motorcycle or moped.") The two UM exclusions are not contradictory.

Similarly, the UIM exclusions cited by Defendants do not contradict UM Exclusion B.5. UIM Exclusions A.1. and A.2 read:

> A. We do not provide Underinsured Motorists Coverage for bodily injury sustained:
>
> 1. By an insured while occupying, or when struck by, any motor vehicle owned by that insured which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.
>
> 2. By any family member while occupying, or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

The UIM exclusions are not readily analogous to UM Exclusion B.5., primarily because the UIM exclusions are broadly applicable owned vehicle exclusions (i.e. applying to "any motor vehicle,") while UM Exclusion B.5. is a narrow motorcycle and moped exclusion. Moreover, UIM Exclusion A.2.'s qualification of "any motor vehicle *you* own," and UIM Exclusion A.1.'s qualification of "any motor vehicle owned *by that insured*," while phrased differently from the unqualified "owned" in UM Exclusion B.5., do not contradict UM Exclusion B.5. Among other things, the UIM exclusions concern an entirely different type of coverage and set of vehicles than UM Exclusion B.5. There is no argument that the UIM exclusions provides coverage which UM Exclusion B.5. takes away, or *vice versa*.

The Court finds no ambiguity in the Policy's motorcycle exclusion as alleged by Defendants. Defendants' proposed multiple meanings of "owned" in the Exclusion are not reasonable, and there are no provisions contradictory to the Exclusion. To find otherwise would require this Court to impermissibly "exercise inventive powers for the purpose of creating an ambiguity when none exists." *Todd*, 223 S.W.3d at 163. Accordingly, even in the event that Lauren is an "insured" under the Auto Policy, the Accident was nonetheless subject to the Exclusion. Plaintiffs are entitled to judgment as a matter of law on this issue, while Defendants are not.

"Illusory coverage"

The Court now assumes without deciding that Lauren did not meet the definition of an "insured" under the Auto Policy's UM coverage, and proceeds to examine whether Joseph and Nancy received only "illusory coverage" for Lauren under the Auto Policy. It is not disputed that Lauren was included in the Auto Policy as a "rated driver" and that Nancy and Joseph were charged premiums for each type of coverage and each vehicle for Lauren's inclusion. Defendants argue that if Lauren is not an "insured" under the Auto Policy, then she is nothing more than a "permissive user" under the Auto Policy. Defendants further argue that permissive user coverage is included in the named insureds' premiums, so the money they paid to include Lauren as a "rated driver" got them no additional

coverage. Defendants contend that payment for coverage that does not exist is an illusion that creates ambiguity which must be resolved in favor of coverage.

Defendants cite *Truman Med. Ctr., Inc. v. Progressive Cas. Ins. Co.*, 597 S.W.3d 362 (Mo. App. W.D. 2020), as "the only Missouri case dealing with a rated driver." Defendants admit that the case "only peripherally touches on insurance coverage." The cited case, however, has nothing to do with illusory coverage or the interpretation of the coverage provisions of an insurance contract. Rather, the Missouri Court of Appeals' statement that the rated driver was provided with uninsured motorist coverage under the insurance policy in question was presented as an uncontroverted fact on the record, not the result of the court's analysis of the policy. *Id.* at 367. In *Truman*, the language of the policy is not even included or discussed to allow for a comparison to the instant Policy. The case cited by Defendant is not relevant to the Court's analysis here.

It is worth noting that in their reply brief [Doc. No. 57], Defendants assert that the specific term "rated driver" is so important as to render the cases cited by Plaintiffs which use terms like "driver" and "household driver," inapposite. This is not so. The designations in Plaintiffs' cited cases are analogous to the "rated driver" designation for the purposes of this summary judgment analysis. Moreover, Defendants did not argue in their initial motion for summary judgment that the actual term "rated driver" was ambiguous, nor did they lodge such an argument in

21

their reply brief. Instead, Defendants based their "illusory coverage" argument on the idea that they "got nothing in return" for the additional premiums paid by Joseph and Nancy to include Lauren as a rated driver, and asserted that "Paying for coverage that does not exist, or is an illusion, creates an ambiguity." That issue, of whether non-"insureds" who are listed in a policy's declarations and who are considered in setting premium rates must be considered as having the same coverage as an "insured," is the issue addressed in the following cases.

Plaintiffs cite to *Ott v. Firemen's Fund Ins. Co.*, 936 S.W.2d 165, 166 (Mo. App. E.D. 1996), in which the plaintiff claimed that "the provisions of the policy [were] ambiguous as to who the insureds were under the policy," and that he should be covered as an insured because "he was designated as one of the permitted drivers in the declarations and that his driving record was considered in setting premiums." The Missouri Court of Appeals rejected the plaintiff's arguments as irrelevant, finding "[t]he policy is quite clear that the coverage afforded is to the named insured [ ] and to persons injured while occupying the vehicle. Plaintiff was neither." *Id.*

*Hibdon v. Farmers Ins. Co., Inc.*, No. 4:16-01318-CV-RK, 2018 WL 2272376, at *1 (W.D. Mo. May 17, 2018), presents a similar fact pattern to the instant case. In *Hibdon*, a couple included their granddaughter as a "household driver" on their insurance policy. *Id.* Their UM and UIM rates increased with the

addition of the household driver, *id.*, just as Joseph and Nancy's UM rates were increased due to the inclusion of Lauren as a rated driver. The granddaughter in *Hibdon* was injured in a car accident that did not involve an auto covered under the policy and sought UM and UIM coverage under the policy, arguing that "the [grandparents] bought added uninsured and underinsured motorist coverage for Plaintiff as a 'household driver.'" *Id.* The *Hibdon* court held:

> [T]he fact that the Policy's premium for uninsured and underinsured motorist coverage increased when Plaintiff was listed as a "household driver" does not mean that she (when occupying a car other than the insured vehicles listed in the Policy) is entitled to uninsured and underinsured motorist coverage when the Policy unambiguously limited that type of coverage to ["insured persons" (as defined in the policy)].

*Id.* at *4 (citing *Eldridge v. Columbia Mut. Ins. Co.*, 270 S.W.3d 423, 428 (Mo. App. W.D. 2008)).

Defendants' argument that they "got nothing in return" for the extra premiums related to Lauren's inclusion as a rated driver is not meritorious. Several courts applying Missouri law have recognized that the "designation of 'driver' on the declarations page of an insurance policy is not without effect." *Eldridge*, 270 S.W.3d at 427 (citing *Kitmirides v. Middlesex Mutual Assurance Co.,* 65 Conn.App. 729, 783 A.2d 1079, 1084 (2001)); *Allstate Prop. & Cas. Ins. Co. v. Davis ex rel. Davis*, 403 S.W.3d 714, 719 (Mo. App. W.D. 2013) (quoting *Eldridge*); *Hibdon,* 2018 WL 2272376, at *4 (quoting *Eldridge*). For example, the

23

Missouri Court of Appeals has stated "the driver designation 'serves as dispositive evidence of permission to use a covered vehicle' or could be used in determining 'the amount of the premium due under the policy.'" *Allstate*, 403 S.W.3d at 719 (quoting *Eldridge*, 270 S.W.3d at 427). In this way, the coverage of a driver listed in the policy declarations is greater than that of a permissive driver, as the insurer cannot dispute a declared driver's permission to use a vehicle. The *Allstate* court stated further:

> More importantly, [in *Eldridge*] we emphasized that the driver designation does not equate a listed driver to a named insured under the policy. We found that such a view was consistent with the general insurance principle that " 'one listed on the policy, but only in the status of a driver of a vehicle, is not a named insured despite the fact that such person's name was physically on the policy.' "

*Id.* (quoting *Eldridge*, 270 S.W.3d at 428).

As a matter of law, the coverage afforded to Lauren as a rated driver under the Auto Policy was not illusory. Accordingly, when it is assumed that Lauren does not meet the definition of an "insured" under the Auto Policy, Plaintiffs are once again entitled to judgment as a matter of law; Defendants are not.

## Conclusion

Having considered each determinative question posited by the parties' motions for summary judgment, the Court finds that Defendants' legal arguments in favor of affording coverage for Lauren's Accident fail as a matter of law. On the contrary, Plaintiffs have established that they are entitled to judgment as a matter

of law as to noncoverage for Lauren's accident. Plaintiffs' Motion for Summary Judgment is granted, and Defendants' Motion for Summary Judgment is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment [Doc. No. 39] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 46] is **DENIED**.

A separate judgment is entered this same date.

Dated this 20th day of August, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE